IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| **Tracey Scott Hughes,** | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 1:23cv1141 (LMB/IDD) |
| | ) | |
| **Rick White,** | ) | |
|     Respondent. | ) | |

### MEMORANDUM OPINION

Tracey Scott Hughes ("Petitioner" or "Hughes"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his convictions for first-degree murder and use of a firearm in the commission of murder in the Circuit Court of the City of Richmond, Virginia. The Respondent has filed a Rule 5 Answer and a Motion to Dismiss with supporting briefs and exhibits [Dkt. Nos. 8–23], and Petitioner has filed several documents in opposition to the motion to dismiss. [Dkt. Nos. 24–27]. After reviewing the pleadings, the Court directed Respondent to supplement his response with copies of the appellate briefs and orders. On April 19, 2024, Respondent supplemented his Rule 5 Answer and Motion to Dismiss with copies of the appellate briefs and orders. [Dkt. Nos. 30, 30–1, 30–2]. Petitioner filed a supplemental opposition on May 13, 2024. [Dkt. No. 31]. For the reasons that follow, Respondent's Motion to Dismiss will be granted, and the petition will be dismissed with prejudice.

### I. Procedural History

On August 3, 2017, a jury sitting in the Circuit Court of the City of Richmond found Hughes guilty of first-degree murder in violation of Virginia Code § 18.2-32, and use of a firearm in commission of a felony in violation of Virginia Code § 18.2-53.1. [Dkt. No. 13–1] at

117–18. The circuit court sentenced Hughes to life in prison for the first-degree murder conviction and three years in prison for the use of a firearm conviction. [Dkt. No. 15–1] at 12–13. The final judgment order of the circuit court was entered on December 14, 2017. Id. at 13.

The Petitioner, by counsel, appealed his convictions to the Court of Appeals of Virginia, asserting a single assignment of error:

> The trial court erred in denying Hughes's motion to strike the evidence of first- degree murder because the Commonwealth failed to prove that Tracey Hughes acted with malice and/or premeditation when he shot the decedent in self-defense.

[Dkt. No. 20–1] at 12. The appellate court denied Hughes' petition for appeal by order dated September 26, 2018, which summarized the evidence as follows:

> Yolanda Worley, appellant's cousin, arrived at appellant's residence sometime around midnight on October 22, 2016. Appellant's brother, James Hughes ("Hughes"), arrived with Worley. Worley explained that appellant was there playing cards with three other men, including the victim, Naquan Bentley. The card game ended without incident, and Bentley left with one of the other men. Bentley returned to appellant's house sometime later. Bentley began arguing with "Hustleman," one of the other guests, and Worley, appellant, and Hughes separated the two men. Worley saw appellant and Bentley leave the house, as she took "Hustleman" to a bedroom to help calm him down. Worley explained that Hughes was agitated and that she tried to prevent him from leaving, but eventually he did join appellant and Bentley outside the house. Hughes and Bentley assumed fighting stances but did not actually engage in an altercation. Appellant stated, "You not going to fight my brother," and then "just pulled out [a gun] and took a shot at" Bentley. After Worley heard the first shot, she was scared and immediately left the residence. She explained that at the time appellant shot Bentley, Bentley was not doing anything to appellant and only had raised his hands towards Hughes. As she ran to her car, Worley heard a few more shots and explained that there was a brief pause between the first shot and the others. Worley heard Bentley say, "Don't shoot me, don't shoot me." Before the shooting, Bentley asked Worley to retrieve his bookbag from the house and Worley brought it outside for him.
>
> Hughes recalled that when Bentley returned to the house Bentley stood outside "running his mouth" and that Hughes and appellant tried to persuade him to leave. Bentley suddenly "pulled his hands to the front and just started running towards" Hughes and appellant, who were standing in the front door. Appellant then shot Bentley. Bentley backed away, and appellant shot him again. After the second shot, Hughes went inside the house and heard at least two more shots. Hughes left the house and called his brother Anthony. Hughes explained that Anthony told him to

2

> call the police and to tell them that Bentley had tried to rob them and that appellant shot Bentley for that reason. Hughes admitted he lied to the police when he called to report the shooting. Hughes testified that at no time during the evening or during the encounter with Bentley did he see Bentley with a weapon.
>
> J.R., a juvenile neighbor, also witnessed the shooting. J.R. saw the victim fall after being shot twice and saw the shooter standing in the doorway. He saw the shooter fire six to eight more shots after the victim fell to the ground.
>
> After the shooting, appellant hid the gun beneath a bush in the alley behind his house. After hearing the gunfire, a neighbor called the police at 6:08 a.m. Hughes did not call the police until 6:37 a.m., after talking to his brother and concocting the false attempted robbery story. When the police arrived, appellant admitted having shot Bentley and he showed the police where he had hidden the weapon.
>
> Bentley died from the gunshot wounds, which included three bullet wounds to the back of his head. He received a total of eight bullet wounds and an additional bullet was lodged in the backpack he was wearing at the time he was shot.

[Dkt. No. 20–1] at 2–3.

Petitioner, by counsel, filed a petition for appeal in the Supreme Court of Virginia, raising the same assertion of insufficiency of the evidence. [Dkt. No. 30–1] at 6. The court refused his appeal on June 11, 2019. [Dkt. No. 30–1] at 1 (Record No. 181403).

Hughes, proceeding pro se, filed a habeas petition in the Supreme Court of Virginia on June 10, 2020. [Dkt. No. 21-2] (Record No. 200870).[1] The petition raised the following claims:

> (1) Counsel was ineffective for "fail[ing] to adequately investigate and/or present significant evidence of his background and mental health in mitigation of his alleged felony offense" either at trial or at sentencing. Id. at 44;
>
> (2) Counsel was ineffective because he "unreasonably advised [Petitioner] to waive and not to testify to the jury on his own behalf." Id. at 48;
>
> (3) Counsel was ineffective because he "present[ed] absolutely no defense whatsoever in response to the criminal charges." Id. at 51.

The Supreme Court of Virginia denied the petition on May 11, 2021. [Dkt. No. 30–1].

---

[1] June 10, 2020 was the last day that Hughes could file his state habeas petition, and he delivered it to a correctional officer that day. [Dkt. No. 21-2] at 2 and 72.

3

## II. Petitioner's Federal Claims

On or about August 17, 2023, Hughes filed a petition for a writ of habeas corpus, raising four claims:

1. Trial counsel was ineffective for failing to object when the Commonwealth failed to prove each element of first–degree murder.
2. The trial court erred in failing to properly instruct the jury on first–degree murder.
3. The trial court erred in finding Petitioner guilty as the evidence was insufficient to prove each and every element of first–degree murder beyond a reasonable doubt.
4. The trial court erred in finding Petitioner guilty where the evidence was insufficient to establish first–degree murder.

## II. Statute of Limitations

Although Respondent raises several meritorious arguments, the Court need only address the argument that Petitioner's federal habeas petition is untimely. Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petition for a writ of habeas corpus must be dismissed if it is filed more than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted and makes it retroactive to cases on collateral review; or (4) the factual predicate of the claim or claims could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

Because Hughes did not file a petition for a writ of certiorari in the Supreme Court of the United States, his convictions became final for federal habeas purposes on September 9, 2019,

4

the date upon which his time for seeking certiorari expired. Thus, the federal limitations period began to run on that date. See Harris v. Hutchinson, 209 F.3d 325, 328 n.1 (4th Cir. 2000) (the AEDPA provides that the one-year period does not commence until the latest of the date when judgment on direct review "became final" or "the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A)); see also Gonzalez v. Thaler, 565 U.S. 134, 149 (2012) (holding that, under § 2244(d)(1)(A), a judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires").

In calculating the one-year period, the Court must exclude the time during which properly filed state collateral proceedings are pending. See 28 U.S.C. § 2244(d)(2); Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Hughes filed a state habeas corpus petition on June 10, 2020. At that time, 275 days of his federal statute of limitations time had run. Hughes' state habeas was dismissed on May 11, 2021. Hughes had 90 days left in which to file his federal petition, and that time expired on August 9, 2021; however, Huges did not file his federal habeas petition until August 17, 2023, which was 738 days after the statute of limitations expired. Absent equitable tolling, Hughes' petition is barred as untimely.

*A. Equitable Tolling*

The doctrine of equitable tolling allows a habeas petitioner to file a federal habeas petition out of time if he can establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," preventing a timely filing. See Holland v. Florida, 560 U.S. 631, 649 (2010) (citation omitted). A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of

5

the test, Yang v. Archuleta, 525 F.3d 925, 928, 930 (10th Cir. 2008) (citation omitted); see also Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001), and generally must specify the steps he took in diligently pursuing his federal claim. A petitioner must also "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (citation omitted). It is widely recognized that equitable tolling is to be applied only infrequently. Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) ("Equitable tolling is appropriate when, but only when, extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.") (alteration in original) (cleaned up).

On the standard from used for filing § 2254 petitions, Hughes was instructed that "[i]f your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations . . . does not bar your petition." Hughes' response was that his attorney failed to object to the sufficiency of the evidence to support his conviction for first–degree murder. [Dkt. No. 1] at 13-14.[2] Along with his petition, Hughes filed a pleading that attempts to summarize a legal standard but does not include any discussion of how the standard applies to his petition. [Dkt. No. 2] at 1. Because this pleading is conclusory, provides no assertion of any specific cause or prejudice, and does not identify any facts that could not have been discovered before he filed his state habeas petition or extraordinary circumstances that prevented him from

---

[2] This statement is irrelevant to the issue of timeliness and is disproved by the record, which establishes that counsel did object to the sufficiency of the evidence supporting Hughes' first–degree murder conviction. The Court of Appeals of Virginia held the evidence was sufficient. [Dkt. 20–1] at 4-5.

6

filing his federal petition, it does not support a claim for equitable tolling.[3] Likewise, none of the pleadings he filed in response to Respondent's motion to dismiss support equitable tolling. Rather, these pleadings essentially repeat his claim that his trial and appellate counsel were ineffective. See [Dkt. Nos. 24, 25, 26, and 31].

All of Hughes' arguments try to excuse his delay by pointing to the lack of sufficient evidence to support his conviction, but he was fully aware of these alleged deficiencies before he filed his state habeas petition. Having failed to provide anything to indicate that extraordinary circumstances prevented him from timely filing his federal petition, Hughes' petition must be dismissed unless he can establish that dismissal would result in a fundamental miscarriage of justice because he was actually innocent of the offenses for which he was convicted.

B. Actual Innocence

Actual innocence can allow review of an untimely habeas petition. McQuiggin v. Perkins, 569 U.S. 383, 392 (2013); however "claims of actual innocence are rarely successful," Schlup v. Delo, 513 U.S. 298, 324 (1995), and "should not be granted casually." Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998). The standard of review for demonstrating innocence under Schlup is a demanding one. It requires that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" McQuiggin, 569 U.S. at 401 (quoting Schlup, 513 U.S. at 316).

---

[3] The state habeas petition discussed the trial proceedings at length and included portions of Petitioner's appellate briefs. [Dkt. No. 21–2] at 28–53. Petitioner also had the benefit of Respondent's motion to dismiss, which included his counsel's affidavit. In the affidavit, counsel denied he was ineffective and set forth his reasons for not calling witnesses and advising Petitioner not to testify. [Dkt. Nos. 22-1 and 22-2].

7

To prevail on an actual innocence claim, a petitioner must present new evidence showing "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327 (emphasis added). Hughes has not proffered any "new reliable evidence" demonstrating a colorable claim of actual innocence. Coleman v. Thompson, 501 U.S. 722, 730 (1991); Sharpe v. Bell, 593 F.3d 372, 377 (4th Cir. 2010). Because Hughes has failed to satisfy the high standard for review of an untimely petition based on a claim of actual innocence, his petition is time-barred and will be dismissed.

### III. Exhaustion and Default

Even if his petition had been timely filed, as Respondent has correctly argued, Hughes' claims would fail because they were procedurally defaulted and, as well demonstrated by the trial record, he was convicted on reliable evidence in a trial that did not include any violations of his federal constitutional rights. For these additional reasons, this §2254 petition would be dismissed even if it were not time-barred.

### IV. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss [Dkt. No. 8] will be granted, and the petition will be dismissed by an order to be issued with this opinion.

Entered this 20th day of June 2024.
Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

8